```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C.,   :
and EAST COAST PLASTIC SURGERY, P.C.,         :
                                              :
                        Plaintiffs,           :
                                              :        23-cv-08514 (LJL)
        -v-                                   :
                                              :        OPINION AND ORDER
AETNA INSURANCE COMPANY,                      :
                                              :
                        Defendant.            :
----------------------------------------------------------------- X
```

LEWIS J. LIMAN, United States District Judge:

Defendant Aetna Insurance Company ("Aetna" or "Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint of Rowe Plastic Surgery of New Jersey, L.L.C. and East Coast Plastic Surgery, P.C. ("Plaintiffs"). Dkt. No. 23.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The Court accepts the allegations of Plaintiffs' Amended Complaint as true for purposes of this motion. Defendants also submitted a transcript of a relevant phone call, Dkt. No. 24-1 ("Phone Call"), which the Court will consider for reasons stated below.

Plaintiffs are a limited liability corporation and a professional corporation that provide plastic surgery services in New Jersey. Dkt. No. 21 ("Compl.") ¶¶ 6–7, 10. Non-parties Sergio Perez and Charles Pierce are medical doctors employed by Plaintiffs. *Id.* ¶ 10. Aetna is an insurer authorized to do business in New York. *Id.* ¶ 3. Plaintiffs, Perez, and Pierce are out-of-network providers, meaning that they are not part of any "provider network" organized by Aetna. *Id.* ¶ 11.

Non-party DP is an individual who needed a reduction mammaplasty and a panniculectomy. *Id.* ¶ 12.[1] Plaintiffs determined that DP was an appropriate candidate for the procedures. *Id.* ¶ 29.

On or about August 24, 2021, a representative of Plaintiffs, "Abigail," called Aetna for the purpose of obtaining insurance payment and coverage information. *Id.* ¶ 20. Abigail spoke to Aetna employee "Sheila" who was able to access Aetna's records for DP to provide information concerning DP's coverage, deductible limits, and out-of-pocket limits, as well as whether or not those limits had been met. *Id.* ¶ 20; *see generally* Phone Call. As reflected in the transcript of the call, Abigail stated that she needed "benefits for outpatient surgery done in a hospital and billing as professional," and provided two "CPT Codes" describing the planned procedures. Phone Call at 4; *see also* Compl. ¶ 22.[2] Abigail then asked Sheila about the in-network and out-of-network benefits to which DP was entitled under her plan. Phone Call at 4. Sheila responded that for in-network providers, DP was entitled to 100 percent coverage with no deductibles for physicians, Phone Call at 5–6, and that for out-of-network providers, DP was entitled to 80 percent coverage after the payment of a $100 deductible with a maximum of $2000 in deductibles, *id.* at 5. Sheila also informed Abigail that precertification was required for out-of-network providers. *Id.* at 7.

---

[1] Reduction mammaplasty is commonly known as breast reduction surgery. *See Breast Surgery*, American Society of Plastic Surgeons, www.plasticsurgery.org/reconstructive-procedures/breast-reduction. Panniculectomy is a surgical procedure that removes hanging skin and fatty tissue from the abdomen. *See Panniculectomy*, American Society of Plastic Surgeons, ww.plasticsurgery.org/reconstructive-procedures/panniculectomy.

[2] "CPT is the commonly used abbreviation for 'Current Procedural Terminology,' a 'system of terminology [that] is the most widely accepted medical nomenclature used to report medical procedures and services under public and private health insurance programs.'" *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 619 n.5 (2d Cir. 2008) (quotation omitted).

Plaintiffs allege that they understood Sheila to commit that Aetna would calculate the reimbursement for the services rendered to DP using "80% reasonable and customary," an industry pricing term that Plaintiffs took to mean that Aetna would reimburse them for 80 percent of the cost charged by other similar medical providers within the same geographic area or market as Plaintiffs for the same procedure.  Compl. ¶¶ 23–25.

On January 19, 2022, Plaintiffs performed a reduction mammaplasty and panniculectomy on DP.  *Id.* ¶ 33.  Plaintiffs claim that these procedures were the same procedures discussed during the Phone Call and that Aetna had determined they were medically necessary in advance of DP's surgery.  *Id.* ¶ 30.  Plaintiffs then billed Aetna $454,704.00 for those services using the same CPT codes provided during the Phone Call.  *Id.* ¶ 35.  Aetna paid $44,906.34, an amount below the 75th percentile of UCR for reduction mammaplasty.  *Id.* ¶ 54.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in the Eastern District of New York on June 20, 2023.  Dkt. No. 1.  Upon Plaintiffs' request and Defendant's lack of opposition, on September 18, 2023, the case was transferred to the Southern District of New York pursuant to 28 U.S.C. § 1406(a).  Dkt. Nos. 13–14.

On November 11, 2023, Defendant filed the instant motion to dismiss along with a memorandum of law and two declarations in support of the motion.  Dkt. Nos. 23–26.  Plaintiffs did not file an opposition to the motion to dismiss.

Plaintiffs have filed numerous nearly identical lawsuits against Aetna in this district.  *See Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Health & Life Ins. Co.*, 2025 WL 1004730, at *1 nn.1–3 (S.D.N.Y. 2025) (listing cases).  On December 11, 2023, Judge Jed S. Rakoff granted Aetna's 12(b)(6) motion to dismiss in the case before him.  *See Rowe Plastic Surgery of N.J.,*

*L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194 (S.D.N.Y. 2023), *aff'd*, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order).

The plaintiff in the case before Judge Rakoff appealed to the United States Court of Appeals for the Second Circuit. All proceedings in this case were stayed from December 22, 2023, to November 30, 2024, while the case dismissed by Judge Rakoff was under consideration by the Second Circuit. Dkt. No. 27. On September 27, 2024, the Second Circuit affirmed Judge Rakoff's dismissal. *See Rowe Plastic Surgery of N.J., L.L.C., v. Aetna Life Insurance Co.*, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order).

On January 23, 2025, Defendant filed an additional memorandum of law in support of the motion to dismiss. Dkt. No. 35. Plaintiffs have not responded to the motion.

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

When a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). Although "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," Fed R. Civ. P. 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiffs may raise this inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

Although the motion to dismiss is unopposed, Plaintiff's failure to oppose the motion does not itself justify the dismissal of the complaint. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) (holding that dismissal based on the plaintiff's failure to respond to a Rule 12(b)(6) motion alone "was error"). "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'" *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall*, 232 F.3d at 322). "Thus, although a party is of course to be given a reasonable opportunity to respond to an

opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (quoting *McCall*, 232 F.3d at 322).

## DISCUSSION

The Second Circuit held in *Rowe Plastic Surgery* that the plaintiffs' allegations of breach of contract, unjust enrichment, promissory estoppel and fraudulent inducement all failed to state a claim for relief. 2024 WL 4315128. The facts here are indistinguishable from *Rowe Plastic Surgery*, and the same result follows.

### I.     Evidentiary Materials

Defendant submitted a transcript of the Phone Call alongside the motion to dismiss. Dkt. No. 24-1. The Court considers the transcript as integral to Plaintiffs' Amended Complaint without converting the motion into one for summary judgment under Rule 56.

In *Rowe Plastic Surgery*, the Second Circuit considered the identical question of whether a call transcript was integral to the plaintiffs' complaint and thus properly considered on a motion to dismiss. 2024 WL 4315128, at *2. The Circuit held that the district court did not err in considering the call transcript because the plaintiffs relied heavily on the call terms in making their allegations and there was no dispute as to the accuracy or authenticity of the call transcript. *Id.* at *2 & n.2. The Circuit held "the transcript is easily determined to be integral to the Amended Complaint." *Id.* at *2.

The Circuit's decision in *Rowe Plastic Surgery* followed naturally from the law regarding the consideration of documents that are integral to a complaint. In considering a Rule 12(b)(6) motion, a court generally reviews only "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d

Cir. 2016). Incorporation by reference requires "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003)).

However, a plaintiff may not elude consideration by cleverly avoiding clear reference to the document upon which its claim is founded. "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "The purpose of the rule is to prevent complaints from being invulnerable at the motion to dismiss stage purely 'by clever drafting.'" *Guzman v. Bldg. Serv. 32BJ Pension Fund*, 2023 WL 2526093, at *6 (S.D.N.Y. Mar. 15, 2023) (quoting *Glob. Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("A document that is integral to the complaint and partially quoted therein may be incorporated by reference in full.").

"Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). "A plaintiff's *reliance* on the terms and effects of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Such reliance requires more than a mention or even limited quotations; the document must "appear to have been necessary to the 'short and plain statement of the claim showing that [a plaintiff is] entitled to relief.'" *Sahu v. Union Carbide Corp.*, 548

F.3d 59, 68 (2d Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)); *see Wen v. N.Y.C. Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 533–34 (S.D.N.Y. 2023), *aff'd*, 2024 WL 4180521 (2d Cir. Sept. 13, 2024). Moreover, "even if a document is 'integral' to the complaint," a court may not consider it if a "dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Here, as in *Rowe Plastic Surgery*, Plaintiff had actual notice of the call transcript, the Phone Call is integral to each of Plaintiff's claims, and there is no issue with respect to the call transcript's accuracy or authenticity. Defendant provided Plaintiffs a recording of the Phone Call and the instant transcript on October 26, 2023, Dkt. No. 24 ¶ 6, two weeks before Plaintiffs submitted their amended complaint. As in *Rowe Plastic Surgery*, all four of Plaintiff's claims are predicated upon Aetna's alleged representation that it would reimburse DP's procedures at "80% reasonable and customary." Compl. ¶¶ 59, 67, 70, 73–74, 78–81. The breach-of-contract claim turns on the Phone Call being a legally binding "offer" which Plaintiffs accepted by performance. *Id.* ¶¶ 33, 37, 59. The unjust enrichment claim alleges that the call contributed to "circumstances where Aetna knew or should have known that [Plaintiffs] expected to be compensated for the benefit according to usual and customary prevailing rates for those services." *Id.* ¶ 65. The promissory estoppel claim also relies on the conversation being a "clear a definite promise to reimburse the medical services provided by [Plaintiffs]." *Id.* ¶ 70. Finally, the fraudulent inducement claim depends on whether Plaintiffs "justifiably relied on Aetna's statements that it would reimburse their services using 80% reasonable and customary." *Id.* ¶ 80. Plaintiffs have not raised any challenge to the accuracy or authenticity of the transcript.

It is of no moment that Plaintiffs rely upon the content of the Phone Call as opposed to expressly relying upon the transcript. Courts regularly consider transcripts of earnings calls as integral to securities fraud complaints where plaintiffs allege a misrepresentation was made on the call. *See, e.g.*, *Shetty v. Trivago N.V*, 796 Fed. Appx. 31, 34 n.6 (2d Cir. 2019) (summary order); *In re Yatsen Holding Ltd. Sec. Litig.*, 2024 WL 3498049, at *1 (S.D.N.Y. July 22, 2024); *Cheng v. Can. Goose Holdings Inc.*, 2021 WL 3077469, at *5 n.4 (S.D.N.Y. 2021); *Frankfurt-Trust Inv. Lux. AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 205 (S.D.N.Y. 2018); *Dekalb Cnty. Emps.' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*, 2016 WL 3685089, at *1 n.1 (S.D.N.Y. July 6, 2016). Plaintiffs had the opportunity to object to the accuracy of the transcript and did not raise any issue.

The transcript is appropriately considered as integral to the complaint.

**I.     Legal Adequacy**

    **A.     Breach of Contract**

Under New York law, the first element of a breach-of-contract claim is the existence of a contract. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000). To plead the existence of a contract, the plaintiff must allege "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004); *see also Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998) ("[C]ourts must be wary of 'trapping parties in surprise contractual obligations that they never intended' to undertake." (quoting *Tchrs. Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 497 (S.D.N.Y. 1987))).

Plaintiffs allege that Aetna offered a "unilateral contract" during the Phone Call, which they accepted by rendering services for DP. Compl. ¶ 33. However, "viewing the [Plaintiffs'] allegations together with the transcript, the [Plaintiffs'] allegations fall short of the definiteness

9

typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty." *Rowe Plastic Surgery*, 2024 WL 4315128, at *3. Plaintiffs' Amended Complaint notes that the phone number is "provided by Aetna for obtaining insurance payment and coverage information." Compl. ¶ 19. The transcript shows that Plaintiffs provided DP's Aetna ID number and received this expected information and nothing more. *See generally* Phone Call. Plaintiffs and Aetna discussed compensation only under the general terms of DP's insurance. "Plaintiffs do not allege that the parties discussed the details of the surgery, the services to be rendered as part of the surgery, or specific prices for those services, nor do Plaintiffs plead any facts to support an inference that Aetna explicitly undertook a duty to pay for the surgery at a specific rate or otherwise." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 2025 WL 1603919, at *4 (S.D.N.Y. June 6, 2025)); *see Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 Fed. Appx. 37, 40 (2d Cir. 2014) (summary order) (holding that conversation leaving thing of value bargained for irredeemably vague could not form contract). "No reasonable person would infer that Aetna's employee made an offer." *Rowe Plastic Surgery of N.J., LLC v. Aetna Life Ins. Co.*, 2024 WL 382143, at *2 (S.D.N.Y. Feb. 1, 2024). Given Plaintiffs' failure to sufficiently plead an offer, their breach-of-contract claim must be dismissed.

      **B.**     **Unjust Enrichment**

"To prevail on a claim for unjust enrichment under New York law, a plaintiff must demonstrate '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). To satisfy the first element, the benefit received by the defendant must be "specific and direct." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.). "For the benefit to be 'direct,' the defendant must either be put in possession of the benefit, or

otherwise obtain financial relief because of the benefit." *Buchwald v. Renco Grp.*, 539 B.R. 31, 49 (S.D.N.Y. 2015) (Nathan, J.), *aff'd sub nom.*, *In re Magnesium Corp. of Am.*, 682 F. App'x 24 (2d Cir. 2017).

The Second Circuit in *Rowe Plastic Surgery* held that the plaintiffs there failed to state a claim for unjust enrichment because the allegations made out only "an abstract and attenuated indirect benefit Aetna received." 2024 WL 4315128, at *3. The allegations here are indistinguishable from those in *Rowe Plastic Surgery*. Plaintiffs allege that "[t]he benefit conferred upon Aetna was the benefit of . . . medical services rendered to DP." Compl. ¶ 66. But this is an indirect benefit—the patient, not Aetna, received the medical treatments. When "an individual patient seeks medical care and the care provider is afforded an opportunity to provider or decline care, the benefit runs entirely to the patient and not an insurer." *See AA Med., P.C. v. Centene Corp.*, 2023 WL 5670682, at *5 (E.D.N.Y. 2023) (collecting cases) (citing *N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.*, 937 N.Y.S.2d 540, 546 (2011)); *see also Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("The insurance company derives no benefit from [services to insured]; indeed, what the insurer gets is a ripened obligation to pay money to the insured.").

Plaintiffs alternatively argue that "Aetna's failure to pay amounts due enriched them because every dollar that Aetna did not pay that it was otherwise obligated to pay was a dollar in Aetna's pockets as profits." Compl. ¶ 63. But as the Second Circuit held, this is too indirect a benefit to support a claim of unjust enrichment. *See Rowe Plastic Surgery*, 2024 WL 4315128, at *3 (rejecting unjust enrichment claim based on allegations that Aetna was enriched by its "failure to pay amounts due" and "every dollar that Aetna didn't pay that it was obligated to pay

11

was a dollar in Aetna's pocket as pure profit"). Because Plaintiffs have not alleged that they conferred a direct benefit upon defendant, their unjust enrichment claim must be dismissed.

    **C.**  **Promissory Estoppel**

  "Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Bader v. Wells Fargo Home Mortg, Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011) (quoting *Randolph Equities, LLC v. Carbon Cap., Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009)). "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye*, 202 F.3d at 615. The Second Circuit affirmed dismissal of the promissory estoppel claim in *Rowe Plastic Surgery* because "the text of the call is ambiguous as to its scope and vague as to the terms" such that the plaintiffs could not allege a sufficiently "clear and unambiguous promise" arising out of their call with Aetna. 2024 WL 4315128, at *4.

  Here too, the terms stated on the Phone Call are too vague to support a promissory estoppel claim. *See Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel." (quoting *Kilgore v. Ocwen Loan Serv., LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015))). "[T]he transcript does not show any representation by Aetna that it would reimburse the [Plaintiffs]; as discussed above, the text of the call is ambiguous as to its scope and vague as to the terms." *Rowe Plastic Surgery*, 2024 WL 4315128, at *4; *accord Rowe Plastic Surgery*, 705 F. Supp. 3d at 204 ("There is no language indicating that defendant's employee undertook an obligation or promised to pay a particular amount."). This is fatal to Plaintiffs' claim of promissory estoppel.

12

### D.    Fraudulent Inducement

To state a claim for fraudulent inducement, the party must allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011)).  "[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *see also N.Y.U. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) ("General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim.").

Here, as in *Rowe Plastic Surgery*, Plaintiffs simply "repurpose[] the allegations underlying their breach of contract claim to allege a fraudulent inducement claim" and the claim must be dismissed.  2024 WL 4315128, at *5.  Plaintiffs contend that an Aetna representative represented that reimbursements would be made at "80% reasonable and customary" when Aetna "knew its claims processing system had no capacity to ensure the claims of [Plaintiffs] would be paid using [that rate]."  Compl. ¶ 79.  This purportedly false promise to reimburse Plaintiffs is no different from Plaintiffs' breach-of-contract claim.  Because Plaintiffs fail to allege any misrepresentation "collateral to" the allegations supporting their breach of contract claim, their fraudulent inducement claim must be dismissed.  *See Rowe Plastic Surgery*, 2024 WL 4315128, at *5.

## CONCLUSION

The motion to dismiss is GRANTED with prejudice.

13

      The Clerk of Court is respectfully directed to close this case.

      SO ORDERED.

Dated: June 26, 2025
       New York, New York

                                                  LEWIS J. LIMAN
                                        United States District Judge